UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES ex rel. JOHN DOE,<br><br>        Plaintiffs,<br>                    v.<br><br>NEW YORK COLLEGE OF HEALTH<br>PROFESSIONS, DONALD SPECTOR,<br>LISA PAMINTUAN, TODRES & COMPANY,<br>LLP, and MICHAEL TODRES,<br><br>        Defendants. | 15 CV ____<br><br>Filed under seal pursuant to<br>31 U.S.C. § 3730(b)(2) |

## COMPLAINT AND DEMAND FOR JURY TRIAL

This is a civil action by John Doe ("relator" or "Doe"), whose true identity has been disclosed to the United States Government, on his own behalf and on behalf of the United States, against defendant New York College of Health Professions ("NYCHP"), Todres & Company LLP ("Todres LLP"), Lisa Pamintuan, Donald Spector and Michael Todres under the *qui tam* provisions of the federal False Claims Act, 31 U.S.C. § 3729 *et seq.,* arising from fraud committed by the defendants against the United States Department of Education. The fraud consisted in creating fraudulent records and submitting fraudulent claims for payment under Federal Student Aid (FSA) programs, such as the Pell Grant Program, Supplemental Educational Opportunity Grants, Family Education Loans , and the federal Work-Study Program. The complaint seeks treble damages, civil penalties, and other relief as provided by the False Claims Act.

1.      As set forth more fully below, the defendants' fraudulent practices consisted primarily misrepresenting NYCHP's financial situation in order for the institution to participate

in government FSA programs and receive FSA monies. These practices not only defrauded the Government but put the institution and its staff and students at risk.

2.     When Doe complained about these practices to Todres, Todres fired him.   In doing so, Todres & Company violated the whistleblower protection provisions of the False Claims Act.

**PARTIES AND ENTITIES**

3.     The United States, through its agency the Department of Education, administers various FSA loan and grant programs.

4.     NYCHP is and was at all relevant times, on information and belief, a not-for-profit college, chartered by the New York State Board of Regents in 1984.    NYCHP's headquarters are  located at 6801 Jericho Turnpike, Syosset, New York 11791.  The college provides graduate, undergraduate programs, and continuing education programs in holistic health care, such as massage therapy, acupuncture, oriental medicine and herbal medicine, holistic nursing for RN's, yoga and t'ai chi instructor certification, and certification in the Science of Self of Improvement.  NYCHP was accredited by the New York State Board of Regents for a three-year period beginning in 2007, and it remains accredited through December 2014.  It conducts programs at its headquarters and at several additional locations in Manhattan.

5.     Todres LLP was at all relevant times a New York limited liability partnership with headquarters located at 400 Post Avenue, Suite 205, Westbury, NY 11590, and an office at 200 West 57th Street, Suite 802, New York, New York.  It performs certified public accounting and consulting services for businesses and private schools, colleges, and foundations.

6.      Michael Todres, CPA was at all relevant times a partner or managing partner of Todres LLP, and was directly involved in and had ultimate oversight over the NYCHP annual audits.

7.      Lisa Pamintuan was at all relevant times the Executive Director of NYCHP.

8.      Donald Spector was at all relevant times the Chairman of the Board of NYCHP.

9.      Doe was employed by Todres & Company, LLP, as a CPA from in or about 2009 to on or about May 31, 2013. During that time Doe worked on annual audits for NYCHP.

**JURISDICTION AND VENUE**

10.     The court has subject matter jurisdiction over the claims alleged in this complaint under 28 U.S.C. §§ 1331 (federal question) and 1345 (United States as plaintiff), and 31 U.S.C. § 3732(a) (False Claims Act).

11.     The court has personal jurisdiction over the defendants pursuant to 31 U.S.C. § 3732(a) because the defendants can be found, reside, or transact business in the Southern District of New York.  Section 3732(a) further provides for nationwide service of process.

12.     Venue is proper in the Southern District of New York under 28 U.S.C. §§ 1391(b) and 31 U.S.C. § 3732(a), because a one or more defendants reside or transact business, and substantial part of the events or omissions giving rise to the violations of 31 U.S.C. § 3729 alleged in this complaint occurred, in this district.

**FCA JURISDICTIONAL BARS**

13.     Upon information and belief, none of the jurisdictional bars set forth in the FCA, 31 U.S.C. § 3730(e), is applicable to this action.

14.     The relator is an original source of the information on which his allegations are based within the meaning of the FCA

## NATURE AND OVERVIEW OF THE ACTION

15.     From 2007 if not earlier, NYCHP has received funding from Federal Student Aid (FSA) programs administered by the United States Department of Education, including the Pell grant Program, Supplemental Educational Opportunity Grants, Family Education Loans , and the federal Work-Study Program.

16.     As a result of the defendants' fraudulent practices, government monies were diverted to an institution that was not financially responsible.  In addition, students were misled by NYCHP's representations on its web site and elsewhere to the effect that the institution was approved by the United States Department of Education and the New York State Education Department for participation in the Pell Grant, FSEOG, Federal Work-Study, and other programs

## FEDERAL STUDENT AID PROGRAMS

17.     Under Title IV, "Student Assistance," of the Higher Education Act of 1965 (HEA), Pub. L. 89-329, 20 U.S.C. § 1001 et seq., educational institutions may receive government funds on behalf of their students through a variety of grant and loan programs. Among these programs are the Federal Pell Grant Program, the Federal Supplemental Educational Opportunity Grant Program, the Federal Family Education Loan Program and the Federal Work-Study Program.  NYCHP has received or applied for Government funds through each of these programs.

18.     Title IV federal student aid (FSA) funds are disbursed and received by participating institutions in various ways. E.g.,

4

- students submit funding requests to DOE directly or through the school (Pell Grants, 20 U.S.C. §§ 1070a - .a-1)

- students and schools jointly submit applications to a private lender for loans that get interest subsidies by the Government and that are guaranteed by private or state agencies, which are reimbursed by the Government in the event of default (Federal Family Education Loan (FFEL) Program, 20 U.S.C. §§ 1071 et seq.)

- institutions apply to DOE for funds on a yearly basis; institutions must contribute 25 percent of the award amounts (Federal Supplemental Educational Opportunity Grant Program, 20 U.S.C. §§ 1070b et seq.; and

- institutions apply for Government funding for part-time employment of students (by the institution itself or other employers) to assist them in paying for postsecondary education (Federal Work Study Program, 42 U.S.C. § 2751 et seq.).

19.    All FSA programs, including (but not limited to) the above, require institutions to enter into a written Program Participation Agreement ("PPA") with the United States Secretary of Education.  In signing the PPA, the institution agrees that it will "comply with the programs' statutes and implementing regulations for institutional eligibility as set forth in 34 C.F.R. Part 600 and for each Title IV, HEA program in which it participates, as well as . . . the Student Assistance General Provisions regulations set forth in 34 C.F.R. Part 668." 20 U.S.C. § 1094(a).

20.    The General Provisions include "standards of financial responsibility." To begin and to continue to participate in any Title IV HEA program, an institution must demonstrate to the DOE that the institution is financially responsible under the requirements established in 34 C.F.R. § 668.15.  An institution is considered financially responsible only if, among other things, it has not had, as part of the audit report for the institution's most recently completed fiscal year, a disclaimed or adverse opinion by the institution's accountant.  34 C.F.R. § 668.15(b)(6)(ii).  In addition, a nonprofit institution must satisfy the regulatory requirements of 34 C.F.R. § 668.15(b)(8).    These requirements relate to the institution's ratio of cash to liabilities,

unrestricted net assets balance, expenditures in relation to revenues, and the rating of its debt obligations.

**DEFENDANTS' FRAUDULENT SCHEMES**

21.     NYCHP and Todres & Company told the government that NYCHP met the financial responsibility standards in 34 C.F.R. § 668.15 and related regulations, when in fact NYCHP did not meet the standards.

### A.      Fraudulent audit reports and financial statements

22.     NYCHP and Todres & Company submitted audit reports to the Government on form SF-SAC, "Data Collection Form for Reporting on Audits of States, Local Governments, and Non-Profit Organizations."   Todres & Company completed the auditor information and supplied the supporting audited financial statement to NYCHP, and NYCHP then transmitted the forms electronically to the Federal Audit Clearinghouse, an office of the U.S. Census Bureau, which in turn transmitted them to DOE.

23.     In signing the SF-SAC forms, NYCHP certified that it engaged an auditor to perform an audit in accordance with OMB Circular A-133 for the fiscal year in question; the auditor presented a report stating that its audit was conducted in accordance with the Circular; and the information submitted was accurate and complete.   Todres & Company as auditor certified that the information it entered in the SF-SAC was based on its complete audit reports as required by OMB A-133.

24.     These certifications were fraudulent, because the audits were not conducted in accordance with OMB A-133 and Todres & Company knew that its answers to questions in the SF-SAC as to NYCHP's financial condition were not true.   Todres & Company's answers that

were untruthful were that its audit report was unqualified and did not disclose any significant deficiencies or material weaknesses.   "Significant deficiencies" and "material weaknesses" are as defined in the American Institute of Certified Public Accountants ("AICPA") generally accepted auditing standards and the GAO Government Auditing Standards.   See "Audits of States, Local Governments, and Non-Profit Organizations," 72 Fed. Reg. 35080 (June 26, 2007).

25.   The NYCHP financial statements in preparation for 2012 presented a falsely favorable picture of the institution's financial condition.   Specifically, items were capitalized when they should have been treated as expenses; other items were shown at full value when they should have been amortized or depreciated; and receivables were included that should not have been, because they were years out of date and uncollectible.

26.   As early as January 2012, Doe told Todres by email that the College was improperly capitalizing expenses, particularly prepaid advertising.   Todres did not respond.

27.   In a series of email messages and conversations with Todres from in or about January through March 2013, Doe told Todres that the financial statements that were being prepared misstated NYCHP's financial condition, with respect to matters including (but not limited to) to prepaid advertising expenses, accounts receivable; intangibles, prepaid spring recruitment, and prepaid publishing.

28.   Todres berated Doe for having his objections to the financial statements in an email message, and tried to "negotiate" with Doe over the numbers for specific entries.   Doe refused to do so and subsequently formally disassociated himself in writing from the engagement.

29.     Todres & Company prepared NYCHP's financial statements for 2008 through 2011 making the same kinds of misrepresentations as Doe–complained about to Todres with respect to 2012.   As a result, form SF-SAC, "Data Collection Form for Reporting on Audits of States, Local Governments, and Non-Profit Organizations," which NYCHP submitted to the government for those prior years was fraudulent as well.  Specifically, in the SF-SAC Todres & Company answered "No" to questions—in general and in particular with respect to federal programs— such as whether the financial statements disclosed a significant deficiency or material noncompliance , and whether any such deficiency was reported as a material weakness. These and other answers in the SF-SAC were literally true of the financial statements presented to the Government, but the financial statements themselves were fraudulent in that they misrepresented NYCHP's true financial condition.

**B.     False certifications in the Program Participation Agreement**

30.     By entering into the Program Participation Agreement, NYCHP falsely certified its compliance with FSA regulatory standards in 34 C.F.R. § 668.15 for financial responsibility, when in fact the institution did not meet many of the standards.

31.     As examples, under the general standards set forth in subsection (a), an institution is considered financially responsible only if it:

a.      is "providing the administrative resources necessary to comply with the requirements of this subpart," 34 C.F.R. § 668.15(b)(2).   On several occasions during the 2012 audit the CFO of NYCHP, Errol Virasawmi, informed Doe that the college was understaffed, in violation of this requirement.   NYCHP did not have enough staff to perform an inventory count, which is necessary for an accurate inventory balance as of the end of the year.

b.      is "meeting all of its financial obligations, including but not limited to" repayments to the Secretary for "liabilities and debts incurred in programs

administered by the Secretary," 34 C.F.R. § 668.15(b)(3)(ii).  In violation of this requirement, the December 31, 2012 cash balance included a Bank of America student refunds account with a negative balance of $122,386

c.     is "current in its debt payments.  The institution is not considered current in its debt payments" if  the institution "is in violation of any existing loan agreement at its fiscal year end, as disclosed in a note to its audited financial statement," 34 C.F.R. § 668.15(b)(4)(i) .  In violation of this requirement, as of December 31, 2012 the college had exhausted its credit line of $1,500,000 with Bank of America, as it had since 2009.  The college has had other high loan balance prior to 2009.

d.     has "not had, as part of the audit report for the institution's most recently completed fiscal year" a statement by the accountant "expressing substantial doubt about the institution's ability to continue as a going concern," 34 C.F.R. § 668.15(b)(6)(i).  The auditors should have expressed substantial doubt about NYCHP's ability to continue as a going concern, but they did not.  If all necessary adjustments had been made, NYCHP would have shown a significant loss, which is enough to trigger a substantial doubt about the institution's ability to continue as a going concern statement.  Substantial doubt about an institution's ability to continue as a going concern exists when a business functions with the threat of liquidation for the foreseeable future, usually regarded as at least 12 months.

e.     has "not had, as part of the audit report for the institution's most recently completed fiscal year" a "disclaimed or adverse opinion by the accountant," 34 C.F.R. § 668.15 (b)(6)(ii).  In violation of this requirement, the auditors should have issued an adverse opinion in the financial statements because of the fraud by NYCHP, but they did not.  Under AU-c Section 705.09,  "An auditor should express an adverse opinion when the auditor, having obtained sufficient appropriate audit evidence, concludes that misstatements, individually or in the aggregate, are both material and pervasive to the financial statements"

32.     As further examples, NYCHP failed to comply with additional standards, set forth in subsection (c) of 34 C.F.R. § 668.15, that apply to nonprofit institutions in particular. A nonprofit institution, such as NYCHP, is considered financially responsible only if it:

a.     prepares "a classified statement of financial position in accordance with generally accepted accounting principles or provides the required information in notes to the audited financial statements," 34 C.F.R. § 668.15(b)(8)(i)(A).  In violation of this requirement, the College did not prepare a financial statement in accordance

with GAAP.   In particular, the following accounts were overstated by the following approximate amounts, totaling approximately $9 million:

> Accounts receivable, $280,000
> Prepaid expenses, $680,000
> Deferred cost, $537,000
> Security deposits and other assets, $330,000
> Intangible assets, $7,000,000
> Fine arts and collectibles (not allowed to be examined by the auditors)

Other assets, such as library books and fine arts and collectibles, were not even examined by the auditors, because NYCHP did not allow the auditors to do so, and yet the financial statements assigned a value to these assets. Expenses were materially understated due to the capitalization of expense items (e.g. prepaid expenses) as assets. As a result, the college should have been showing net losses for recent years rather than net income, and the audited financial statement should have issued an adverse opinion.   An adverse opinion states that the financial statements do not present fairly the financial position, results of operations, or cash flows of the entity in conformity with Generally Accepted Accounting Principles. See AICPA AU § 508.58 (eff. 1996, as amended).

Other expenses were materially understated .  As an example, marketers' salaries and other marketing outlays were capitalized when they should have been treated as expenses.

b.      demonstrates "at the end of its latest fiscal year, an acid test ratio of at least 1:1. For purposes of this section, the acid test ratio shall be calculated by adding cash and cash equivalents to current accounts receivable and dividing the sum by total current liabilities. The calculation of the acid test ratio shall exclude all unsecured or uncollateralized related party receivables," 34 C.F.R. § 668.15(b)(8)(i)(B). While the college ostensibly complied with this ratio, it did so fraudulently by overstating current assets.

|  | 2012 | 2011 | 2010 |
|---|---|---|---|
| Ratio per issued Financial statements (fraudulent) | 1.03 | 1.09 | 1.27 |
| Ratios per adjusted financial statements (actual) | .64:1 | .71:1 | .86:1 |

c.    has, "at the end of its latest fiscal year, a positive unrestricted current fund balance or positive unrestricted net assets. In calculating the unrestricted current fund balance or the unrestricted net assets for an institution, the Secretary may include funds that are temporarily restricted in use by the institution's governing body that can be transferred to the current unrestricted fund or added to net unrestricted assets at the discretion of the governing body," 34 C.F.R. § 668.15(b)(8)(i)(C)(1). In violation of this requirement, the net asset balance since 2005 has been materially overstated and it could quite possibly be a negative balance.

d.    "Has not had, an excess of current fund expenditures over current fund revenues over both of its 2 latest fiscal years that results in a decrease exceeding 10 percent in either the unrestricted current fund balance or the unrestricted net assets at the beginning of the first year of the 2-year period. The Secretary may exclude from net changes in fund balances for the operating loss calculation: Extraordinary gains or losses; income or losses from discontinued operations; prior period adjustment; and the cumulative effect of changes in accounting principle. In calculating the institution's unrestricted current fund balance or the unrestricted net assets, the Secretary may include funds that are temporarily restricted in use by the institution's governing body that can be transferred to the current unrestricted fund or added to net unrestricted assets at the discretion of the governing body," 34 C.F.R. § 668.15(b)(8)(i)(C)(2).

e.    When the financial statements are presented fairly, the current fund expenditures over current fund revenues over both of its two latest fiscal years that result in a decrease exceeding 10 percent in the unrestricted net assets at the beginning of the first year of the 2 year period.

33.    The regulation allows exceptions, stated in subsection (d) of 34 C.F.R. § 668.15, to the general standards of financial responsibility. However, upon information and belief, NYCHP did not qualify for the exceptions.

11

### C.  Student placement and completion rate misrepresentations

34.     Todres & Co. also falsely stated in the NYCHP audit reports that they had performed a regulatory compliance audit for NYCHP with respect to the school's course completion and placement rates (among other aspects of its operations), when it fact the auditors had not performed any such audit.

35.     The compliance audit, known as an A-133 audit, is required by FSA regulations. Despite Todres & Company's not doing the audit, NYCHP advertised placement rates on its web site.

36.     As an example, NYCHP stated on its web site that in 2011 it had a placement rate of 85%.

### D.  False Claims Act violations

37.     The applications for FSA program funds by NYCHP on its own behalf and/or on behalf of students, and applications by NYCHP students and/or prospective students for FSA funds and for government-subsidized and government-guaranteed loans are the false or fraudulent "claims" that the defendants knowingly submitted or caused to be submitted to the government for payment or approval, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1) (as in effect prior to May 20. 2009), and 31 U.S.C. § 3729(a)(1)(A) (as amended effective May 20, 2009).

38.     SF-SAC forms and supporting financial statements and one or more NYCHP Participation Agreements, and other accounting documents, are the "false records or statements" that the defendants knowingly made, used, or caused to be made or used to get a false or fraudulent claim paid or approved by the Government, and to conceal, avoid, or decrease an

12

obligation to pay or transmit money or property to the Government, in violation of 31 U.S.C. § 3729(a)(2) and (7) (as in effect prior to May 20, 2009); and by means of which the defendants knowingly concealed and improperly avoided or decreased an obligation to pay or transmit money or property to the Government, in violation of the False Claims Act, 31 U.S.C. 3729(a)(1)(B) and (G) (as amended effective May 20. 2009).

### RETALIATION AGAINST DOE

39.     On March 20, 2013 Doe emailed Todres that he did not finish the NYCHP financial statements and that he was formally disassociating himself from the NYCHP audit because issuing the financial statements without adjustments that Doe proposed and that Todres rejected would misrepresent the College's financial condition.

40.     With respect to the 2012 financial statements in preparation, on or about March 21, 2013 Doe told Todres in a face-to-face conversation that what Todres and NYCHP were doing was "wrong" and constituted "practically fraudulent financial reporting."  Todres verbally berated Doe for putting his objections to the financial statements in writing in email messages.

41.     Doe was fired by Todres without warning on May 31, 2013.  Todres again told Doe he should not have put in writing in email messages that NYCHP financial statements were being misrepresented.

42.     Todres also said Doe was being let go ostensibly because his work was no longer needed, he had made mistakes, and he did not get along with certain clients.  However, this was the first time Todres had raised such issues with Doe.  Todres had previously given Doe favorable performance reviews, raises, and bonuses.

43.     The issues Todres raised with Doe were a pretext for retaliation.   In fact the reason Todres fired Doe was because Doe stated objections to Todres about the various fraudulent schemes concerning NYCHP that are alleged in this complaint.

## COUNT I
### False Claims Act Violations
### 31  U.S.C. § 3729(a)(1), (2) and (7)—All defendants

44.     Doe realleges the above allegations as if set forth fully here.

45.     This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. §§ 3729-32, prior to the May 20, 2009 amendment.

46.     Through the acts described above and otherwise, since approximately 2007 if not earlier, the defendants, by and through their agents and employees: (i) knowingly presented, or caused to be presented, to an officer or employee of the United States Government a false or fraudulent claim for payment or approval; (ii) knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government; and (iii) knowingly made, used, or caused to be made or used a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government.

47.     On information and belief, the United States was unaware of the falsity of the records, statements, and claims made or submitted by the defendants.

48.     On information and belief, the false and fraudulent representations and claims made to the United States by the defendants were material to the Government's decisions to disburse FSA funds and subsidize and/or guarantee loans to NYCHP on its behalf or on behalf of NYCHP students and/or prospective students.

14

49.     On information and belief, if the United States had known of the false or fraudulent nature of the defendants' representations and claims, it would not have disbursed FSA funds or subsidized and/or guaranteed loans to NYCHP on its behalf or on behalf of NYCHP students and/or prospective students.

50.     The Government has suffered economic loss as a result of the defendants' wrongful conduct.

**COUNT II**
**False Claims Act Violations**
**31 U.S.C. § 3729(a)(1)(A), (B), and (G)—All defendants**

51.     Doe realleges the above allegations as if set forth fully here.

52.     This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. §§ 3729-32, as amended on May 20, 2009.

53.     Through the acts described above and otherwise, the defendants, by and through their agents and employees (i) knowingly presented, or caused to be presented, a false or fraudulent claim for payment or approval; (ii) knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim; and (iii) knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government.

54.     On information and belief, the United States was unaware of the falsity of the records, statements, and claims made or submitted by the defendants.

55.     On information and belief, the false and fraudulent representations and claims made to the United States by the defendants were material to the Government's decisions to disburse FSA funds and issue subsidized and/or guaranteed loans to NYCHP on its behalf or on behalf of NYCHP students and/or prospective students.

56.     On information and belief, if the United States had known of the false or fraudulent nature of the defendants' representations and claims, it would not have disbursed FSA funds or subsidized and/or guaranteed loans to NYCHP on its behalf or on behalf of NYCHP students and/or prospective students.

57.     The Government has suffered economic loss as a result of the defendants' wrongful conduct.

<u>**COUNT III**</u>
**False Claims Act Violations**
**31  U.S.C. § 3729(a)(3)—All defendants**

58.     Doe realleges the above allegations as if set forth fully here.

59.     This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. §§ 3729-32, prior to the May 20, 2009 amendment.

60.     In connection with claims for FSA funds from at least as early as 2008 to 2012, if not later, defendants Todres & Company and Michael Todres knowingly conspired with NYCHP, Pamintuan, Spector and others to defraud the Government by getting a false or fraudulent claim allowed or paid, namely, obtaining student FSA funds and/or government-subsidized and/or –guaranteed loans on behalf of NYCHP or NYCHP students and/or prospective students, for which NYCHP was not eligible, by misrepresenting NYCHP's financial

condition, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(3) (as in effect prior to May 20, 2009).

61.     In furtherance of the conspiracy, the defendants and others committed various overt acts, including conferring as to the content of the NYCHP financial statements, and Todres' instructing accountants and auditors at NYCHP's behest not to audit certain items.  In addition, on information and belief, or about March 26, 2013, Spector and Pamintuan told Todres they could not make the adjustments to the financial statements that Doe presented because it would negatively affect their ability to obtain federal student loans.

62.     On information and belief, the United States was unaware of the falsity of the records, statements, and claims made or submitted by the defendants.

63.     On information and belief, if the United States had known of the false or fraudulent nature of the defendants' representations and claims, it would not have disbursed FSA funds or issued subsidized and/or guaranteed loans to NYCHP on its behalf or on behalf of NYCHP students and/or prospective students.

64.     The Government has suffered economic loss as a result of the defendants' wrongful conduct.

## COUNT IV
### False Claims Act Violations
### 31 U.S.C. § 3729(a)(1)(C)—All defendants

65.     Doe realleges the above allegations as if set forth fully here.

66.     This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. §§ 3729-32, as amended on May 20, 2009.

67. In connection with claims for FSA funds from at least as early as 2008 to 2012, if not later, defendants Todres & Company and Michael Todres knowingly conspired with NYCHP, Pamintuan, Spector and others to defraud the Government by getting a false or fraudulent claim allowed or paid, namely, obtaining student FSA funds for which NYCHP was not eligible, by misrepresenting NYCHP's financial condition, in violation of the False Claims Act, 31 U.S.C. §§ (a)(1)(C).

68. In connection with SF-FSA forms and financial statements submitted to the Government, from at least in or about to at least in or about 2012 in the Southern District of New York, and elsewhere, defendants Todres & Company and Michael Todres knowingly conspired with NYCHP, Pamintuan, Spector and others to defraud the Government by obtaining student FSA funds for which NYCHP was not eligible, by misrepresenting NYCHP's financial condition.

69. In furtherance of the conspiracy, the defendants and others committed various overt acts, including conferring as to the content of the NYCHP financial statements, and Todres' instructing accountants and auditors at NYCHP's behest not to audit certain items. In addition, on information and belief, or about March 26, 2013, Spector and Pamintuan told Todres they could not make the adjustments to the financial statements that Doe presented because it would negatively affect their ability to obtain federal student loans.

70. On information and belief, the United States was unaware of the falsity of the records, statements, and claims made or submitted by the defendants.

71.     On information and belief, the false and fraudulent representations and claims made to the United States by the defendants were material to the Government's decisions to disburse FSA funds to NYCHP and/or students.

72.     On information and belief, if the United States had known of the false or fraudulent nature of the defendants' representations and claims, it would not have disbursed FSA funds or issued subsidized and/or guaranteed loans to NYCHP on its behalf or on behalf of NYCHP students and/or prospective students.

73.     The Government has suffered economic loss as a result of the defendants' wrongful conduct.

## <u>COUNT V</u>
**Retaliation in Violation of 31 U.S.C. § 3730(h)—Defendant Todres & Company**

74.     Doe realleges the above allegations as if set forth fully here.

75.     This is a claim for reinstatement, two times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees, and all other relief necessary to make Doe whole.

76.     Todres & Company harassed, discharged and otherwise discriminated against Doe in the terms and conditions of his employment because of lawful acts done by Doe in furtherance of an action under 31 U.S.C. § 3730 or other efforts to stop one or more violations of the False Claims Act.

77.     Doe has suffered economic loss and other damages as a result of Todres & Company's wrongful conduct.

**DEMAND FOR RELIEF**

WHEREFOR, the Relator, on behalf of himself individually and acting behalf and in the name of the United States, demands judgment against the defendants as follows:

A.    On Counts I through IV,

(i)    Directing that defendants cease and desist from violating the FCA;

(ii)    In the amount of three times the amount of damages the United States has sustained because of defendants' actions, plus a civil penalty of $11,000 for each act in violation of the FCA, as provided by 31 U.S.C. § 3729(a), with interest;

(iii)    Directing that the Relator be awarded the maximum amount available under 31 U.S.C. § 3730(d) for bringing this action, namely, twenty-five percent of the proceeds of the action or settlement of the claim if the United States intervenes in the matter (or pursues its claim through any alternate remedy available to the United States, 31 U.S.C. § 3730(c)(5)), or, alternatively, thirty percent of the proceeds of the action or settlement of the claim, if the United States declines to intervene;

(iv)    Awarding the Relator all reasonable expenses necessarily incurred in prosecution this action, plus all reasonable attorneys' fees and costs, as provided by 31 U.S.C. § 3730(d);

B.    On count V, reinstatement, two times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees, and all other relief necessary to make Doe whole; and

C.      All other appropriate relief for the United States and Doe.

**DEMAND FOR JURY TRIAL**

Doe hereby demands trial by jury.

Dated:  New York, New York
        March 2, 2015

                              Timothy J. McInnis
                              Richard F. Bernstein
                              McINNIS LAW
                              By:  _____/s/_____
                                    Richard F. Bernstein
                              521 Fifth Avenue, 17th Floor
                              New York, New York 10175-0038
                               (212) 292-4573
                              *Attorneys for relator*

21