UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HERMAN ORTIZ,<br><br>      Plaintiff,<br><br>               v.<br><br>TODRES & COMPANY, LLP,<br><br>      Defendant. | 15 CV 1506 (LGS) |

### AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

1. This is a civil action by plaintiff Herman Ortiz ("plaintiff" or "Ortiz") against defendant Todres & Company, LLP ("Todres LLP" or "defendant"), an accounting firm, for violation of the whistleblower protection provisions of the False Claims Act, 31 U.S.C. § 3730(h) stemming from Todres & Co.'s harassing and firing Ortiz in retaliation for reporting and attempting to stop fraud against the United States committed by Todres LLP and others. As set forth more fully below, Todres LLP's fraudulent practices consisted primarily in misrepresenting the financial condition of its client, New York College of Health Professions ("NYCHP"), in order for NYCHP to participate in federal student aid ("FSA") programs and to receive FSA monies.

    **PARTIES AND ENTITIES**

2. Ortiz was employed by Todres LLP as a CPA from in or about 2009 to on or about May 31, 2013. During that time Ortiz worked on annual audits for NYCHP.

3. Todres LLP was at all relevant times a New York limited liability partnership with headquarters located at 400 Post Avenue, Suite 205, Westbury, NY 11590, and an office at

200 West 57th Street, Suite 802, New York, New York. It performs certified public accounting and consulting services for businesses and private schools, colleges, and foundations.

4. Michael Todres, CPA ("Todres") was at all relevant times a partner or managing partner of Todres LLP; was directly involved in and had ultimate oversight over the NYCHP annual audits; and was Ortiz' supervisor.

5. NYCHP is and was at all relevant times, on information and belief, a not-for-profit college, chartered by the New York State Board of Regents in 1984, with headquarters located at 6801 Jericho Turnpike, Syosset, New York 11791. The college provides graduate, undergraduate, and continuing education programs in holistic health care, such as massage therapy, acupuncture, oriental medicine and herbal medicine, holistic nursing for RN's, yoga and t'ai chi instructor certification, and certification in the Science of Self of Improvement. It conducts programs at its headquarters and at several additional locations in Manhattan.

6. Lisa Pamintuan was at all relevant times the Executive Director of NYCHP.

7. Donald Spector was at all relevant times the Chairman of the Board of NYCHP.

**JURISDICTION AND VENUE**

8. The court has subject matter jurisdiction over the claims alleged in this complaint under 28 U.S.C. §§ 1331 (federal question) and 31 U.S.C. § 3732(a) (False Claims Act).

9. The court has personal jurisdiction over Todres LLP pursuant to 31 U.S.C. § 3732(a) because the defendant resides and transacts business in the Southern District of New York. Section 3732(a) further provides for nationwide service of process.

10. Venue is proper in the Southern District of New York under 28 U.S.C. §§ 1391(b)(1) and (c)(2) and 31 U.S.C. § 3732(a), because the defendant resides in this district.

**NATURE AND OVERVIEW OF THE ACTION**

11. Ortiz commenced this action on March 2, 2015 by filing the original complaint, under seal as required by the FCA, alleging *qui tam* claims against Todres LLP, Todres, NYCHP, Pamintuan, and Spector (the "*qui tam* defendants") and retaliation claims against Todres LLP.

12. The complaint alleged in essence that the *qui tam* defendants, in order to obtain FSA funds, created and submitted to the United States Department of Education ("DOE") false and fraudulent claims and records in violation of the FCA.

13. More specifically, the complaint alleged that the *qui tam* defendants' fraudulent schemes included principally, regarding the application for, and receipt of FSA funds, creating and submitting fraudulent audit reports and financial statements; making false certifications in the Program Participation Agreement; and misrepresenting student placement and completion rates. The complaint further alleged that by means of these fraudulent schemes, NYCHP obtained a substantial amount of FSA funds; and as a result government monies were misused and students were placed at risk.

14. By Stipulation and Order dated June 26, 2017 the *qui tam* claims have been dismissed without prejudice. The Stipulation and Order further provides that Ortiz may file this amended complaint to pursue his retaliation claims.

**ORTIZ'** ***QUI TAM*** **CLAIMS**

15. Ortiz learned that since 2009 if not earlier, the *qui tam* defendants engaged in schemes to defraud the United States by, among other things, submitting audit reports to DOE on form SF-SAC, "Data Collection Form for Reporting on Audits of States, Local Governments,

3

and Non-Profit Organizations," and accompanying NYCHP financial statements and other financial information relating to NYCHP and its participation in FSA programs. Todres LLP completed the auditor information and supplied the supporting audited financial statements to NYCHP, and Todres LLP and NYCHP then transmitted the SF-SAC forms and financial statements electronically to the Federal Audit Clearinghouse, an office of the U.S. Census Bureau, which in turn transmitted them to the DOE.

16. In signing the SF-SAC forms, NYCHP certified that it engaged an auditor to perform an audit in accordance with OMB Circular A-133 for the fiscal year in question; the auditor presented a report stating that its audit was conducted in accordance with the Circular; and the information submitted was accurate and complete. Todres LLP as auditor certified that the information it entered in the SF-SAC was based on its complete audit reports as required by OMB A-133. These certifications were fraudulent, because the audits were not conducted in accordance with OMB A-133 and Todres LLP knew that its answers to questions in the SF-SAC as to NYCHP's financial condition were not true. Todres LLP's answers that were untruthful were that its audit report was unqualified and did not disclose any significant deficiencies or material weaknesses. "Significant deficiencies" and "material weaknesses" are as defined in the American Institute of Certified Public Accountants ("AICPA") generally accepted auditing standards and the GAO Government Auditing Standards. See "Audits of States, Local Governments, and Non-Profit Organizations," 72 Fed. Reg. 35080 (June 26, 2007).

17. The NYCHP financial statements in preparation for 2012 presented a falsely favorable picture of the institution's financial condition. As examples, items were capitalized when they should have been treated as expenses; other items were shown at full value when they

4

should have been amortized or depreciated; and receivables were included that should not have been, because they were years out of date and uncollectible. The NHCHP financial statements prepared by Todres LLP and submitted to DOE for previous years were also fraudulent in that they falsely overstated the college's true financial condition.

**RETALIATION AGAINST ORTIZ**

18. As early as January 2012, Ortiz told Todres by email that the College was improperly capitalizing expenses, particularly prepaid advertising. Todres did not respond.

19. In a series of email messages and conversations with Todres from in or about January through March 2013, Ortiz told Todres that the financial statements that were being prepared misstated NYCHP's financial condition, with respect to matters including (but not limited to) prepaid advertising expenses, accounts receivable; intangibles, prepaid spring recruitment, and prepaid publishing.

20. Todres berated Ortiz for having his objections to the financial statements in an email message, and tried to "negotiate" with Ortiz over the numbers for specific entries. Ortiz refused to do so and subsequently formally disassociated himself in writing from the engagement.

21. Todres LLP prepared NYCHP's financial statements for 2008 through 2011 making the same kinds of misrepresentations as Ortiz complained about to Todres with respect to 2012. As a result, form SF-SAC, "Data Collection Form for Reporting on Audits of States, Local Governments, and Non-Profit Organizations," and financial statements which NYCHP submitted to the government for those prior years was fraudulent as well. Specifically, in the SF-SAC Todres LLP answered "No" to questions—in general and in particular with respect to

5

federal programs—such as whether the financial statements disclosed a significant deficiency or material noncompliance, and whether any such deficiency was reported as a material weakness. These and other answers in the SF-SAC were literally true of the financial statements presented to the Government, but the financial statements themselves were fraudulent in that they misrepresented NYCHP's true financial condition.

**22.** On March 20, 2013, Ortiz emailed Todres that he did not finish the NYCHP financial statements and that he was formally disassociating himself from the NYCHP audit because issuing the financial statements without adjustments that Ortiz proposed and that Todres rejected would misrepresent the College's financial condition.

23. With respect to preparing the 2012 financial statements, on or about March 21, 2013, Ortiz told Todres in a face-to-face conversation that what Todres and NYCHP were doing was "wrong" and constituted "practically fraudulent financial reporting." Todres verbally berated Ortiz for putting his objections to the financial statements, i.e., that they presented a falsely favorable picture of NYCHP's financial condition, in writing in email messages.

24. Ortiz was fired by Todres without warning on May 31, 2013. Todres again told Ortiz he should not have put in writing in email messages that NYCHP financial statements, which were to be submitted to the Federal Audit Clearinghouse, were being misrepresented.

25. Todres also said Ortiz was being let go ostensibly because his work was no longer needed, he had made mistakes, and he did not get along with certain clients. However, Todres had never raised such issues with Ortiz before he refused to participate in creating false financial statements that would be submitted to the Department of Education. Before that Todres had given Ortiz favorable performance reviews, raises, and bonuses.

26. The issues Todres raised with Ortiz were a pretext for retaliation. In fact the reason Todres fired Ortiz was because Ortiz stated objections to Todres about, and resisted, the various fraudulent schemes concerning NYCHP, as described above and in the original complaint..

## COUNT I
### Retaliation in Violation of 31 U.S.C. § 3730(h)

27. Ortiz realleges the above allegations as if set forth fully here.

28. This is a claim for reinstatement with all fringe benefits and seniority rights that Ortiz would have had but for Todres LLP's retaliation, two times the amount of back pay, interest on the back pay, actual damages and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees, and all other relief necessary to make Ortiz whole, as provided by 31 U.S.C. § 3730(h);

29. Todres LLP harassed, discharged and otherwise discriminated against Ortiz in the terms and conditions of his employment because of lawful acts done by Ortiz in furtherance of an action under 31 U.S.C. § 3730 or other efforts to stop one or more violations of the False Claims Act.

30. Ortiz has suffered economic loss and other damages as a result of Todres LLP's wrongful conduct.

## DEMAND FOR RELIEF

WHEREFOR, Ortiz demands judgment against Todres LLP for:

A. Reinstatement with all fringe benefits and seniority rights that Ortiz would have had but for Todres LLP's retaliation, two times the amount of back pay, interest on the back pay,

actual damages and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees, and all other relief necessary to make Ortiz whole, as provided by 31 U.S.C. § 3730(h);

B.    An injunction against Todres LLP and all those acting in concert with it prohibiting them from any further retaliation against Ortiz; and

C.    All other appropriate relief.

## DEMAND FOR JURY TRIAL

Ortiz hereby demands trial by jury.

Dated: New York, New York
       July 14, 2017

>                Timothy J. McInnis
>                Richard F. Bernstein
>                McINNIS LAW
>
>                By:    /s/
>                       Richard F. Bernstein
>                521 Fifth Avenue, 17th Floor
>                New York, New York 10175-0038
>                 (212) 292-4573
>                *Attorneys for Plaintiff*