USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/14/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
HERMAN ORTIZ,                                                 :
                                    Plaintiff,                :
                                                              :           15 Civ. 1506 (LGS)
                    -against-                                 :
                                                              :           **OPINION AND ORDER**
                                                              :
TODRES & COMPANY, LLP,                                        :
                                    Defendant.                :
------------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

  Plaintiff, Herman Ortiz, brings this action under the retaliation provisions of the False Claims Act ("FCA"), 31 U.S.C. § 3730(h). Plaintiff alleges that he was fired by his former employer, Defendant Todres & Company, LLP ("Todres & Co.") for complaining of Defendant's "fraudulent" misrepresentation of the New York College of Health Professions' ("NYCHP's") financial statements in order for the institution to participate in Federal Student Aid ("FSA") programs. Defendant moves for summary judgment and asserts a counterclaim for tortious interference with prospective economic advantage. Plaintiff opposes Defendant's motion and cross-moves for summary judgment on Defendant's counterclaim. For the following reasons, both motions are granted.

I. **BACKGROUND**

  The summary below is taken from the parties' Rule 56.1 statements as well as materials filed in support of the motions.

  Plaintiff Ortiz is a licensed Certified Public Accountant and was employed by Defendant from November 2009 to May 31, 2013. For fiscal years 2008 through 2015, Defendant audited the financial statements of NYCHP, a non-profit vocational school that receives funds through the FSA programs. Plaintiff worked as an auditor on the audit of the NYCHP 2012 financial

statements, and Plaintiff's responsibilities included A-133 testing and auditing assets, receivables and intangibles. Tom Kelly was the Audit Manager for that audit, and Michael Todres was responsible for overall supervision and review of the audit.

A requirement to continue to participate in the FSA programs, among other things and as relevant here, was that in NYCHP's audit reports for the most recent fiscal year, the auditors did not express substantial doubt about the institution's ability to continue as a going concern or render a disclaimed or adverse opinion, 34 C.F.R. 668.15(b)(6), and that NYCHP's financial statements showed a positive unrestricted fund balance or positive unrestricted net assets, 34 C.F.R. 668.15(c)(8)(i)(C).

A significant portion of NYCHP's total assets and net unrestricted assets reflected in its financial statements were intangible assets -- i.e., patents that Donald Spector, the former Chairman of NYCHP, had donated to NYCHP. Because NYCHP initially intended to sell the patents, NYCHP was carrying them on its balance sheet at their full market value, without amortization, when Defendant took over auditing the account. NYCHP continued to carry the patents at their market value thereafter in fiscal years 2009, 2010 and 2011.

During the NYCHP 2012 audit, on March 20, 2013, Plaintiff emailed Todres and said:

I did not finish New York college financial statements. I attached the journal entries that we discussed and I believe all of them should be entered with the exception of journal entry 28 and issuing the financial statements any other way, would be a misrepresentation of the financial statements.

The journal entries to which Plaintiff referred included proposals to reduce the patent (intangible asset) value by $12,043,179; receivables by $279,000; and prepaid expenses by $723,796.

Plaintiff raised the issue that, since the patents had not been sold, their value should be amortized, and later explained, "Per FAS 142. If an intangible asset has a finite useful life, but

2

the precise length of that life is not known, that intangible asset shall be amortized over the best estimate of its useful life. In this case patents are usually between 15-20 years." Todres agreed and asked NYCHP to identify the patents that they were no longer going to try to sell, so that the patents could be amortized.

The final audited version of the 2012 financial statements reduced the value of the patents by $4,917,689, which consisted of amortization for 2012, 2011 (restated to "correct[] accounting errors") and prior years (a "prior period adjustment"). Todres made the judgment to amortize "since the beginning" the patents that in 2013 NYCHP said it no longer intended to sell, but not to amortize the patents that NYCHP said that it did intend to sell. Ortiz wanted to amortize all of the patents rather than distinguish between those that were still held for sale and those that were not.

The final 2012 financial statements also reduced receivables by $200,000. Prepaid expenses were not stated separately but were aggregated with "deferred costs" for a total of $1,307,027. As compared with the initial proposed numbers, total assets were adjusted from $44.6 million to $39.4 million, and net unrestricted assets were adjusted from $39.2 million to $34.0 million. By comparison, Ortiz had proposed total assets of $31.5 million and net unrestricted assets of $26.1 million.

Plaintiff believed that the valuations were not reduced to the extent necessary to "avoid misrepresentation." During the course of this litigation, Plaintiff produced a memo dated March 28, 2013 ("the disassociation memo"), in which he raised issues with the 2012 NYCHP audit and stated that he was disassociating himself from the audit.[1] Plaintiff concedes that he "did not give

---

[1] With respect to the intangible assets, the disassociation memo states that Plaintiff and Todres disagreed over the extent to which the patents should be amortized. According to the memo,

3

or email the memo to Todres." Plaintiff testified that he saved the disassociation memo in the NYCHP 2012 audit's electronic binder, but Todres testified that he never saw the memo, and that no evidence of the memo in the electronic binder existed, even as it was produced to the Government. Ortiz discussed the subject matter of the memo with Defendant on March 21, 26, 27 and 28, 2013. After March 28, 2013, the date of the disassociation memo, Plaintiff continued to work on the NYCHP audit through his final day at Todres & Co. on May 31, 2013.

The parties dispute whether Plaintiff was terminated. Plaintiff testified that on May 31, 2013, Todres terminated Plaintiff and said Plaintiff should "not have sent him those emails in regard to [NYCHP]". Todres testified that on the morning of May 31, 2013, Plaintiff asked Todres for a $10,000 raise, or "his last day would be Tuesday." Todres denied the raise, and Plaintiff sent an email at the end of the day on May 31, 2013, stating "[m]y time at Todres has come to an [e]nd. It was great working with everyone. Good luck in the future."

On March 2, 2015, Plaintiff commenced this action by filing a qui tam complaint under seal pursuant to the FCA, alleging that Defendant had engaged in fraud by creating fraudulent records and submitting fraudulent claims for payment under the FSA programs and misrepresenting NYCHP's financial condition in order for the institution to participate in government FSA programs. In September 2016, the U.S. Attorney for the Southern District of New York issued Civil Investigative Demand ("CID") letters pursuant to the FCA on Defendant and NYCHP. As a result, NYCHP retained Prager Metis instead of Defendant to audit NYCHP's 2016 financial statements. Prager Metis did not make any adjustments to Defendant's

---

Todres initially "sided with" Plaintiff on his appraisal of the patents, but the memo incorrectly states that "on 3/28/13, [Todres] changed his point of view and determined that none of the patents should be amortized." In fact, the final audited NYCHP financial statement amortized the patents and adjusted the valuation of the intangible assets by over four million dollars.

past financial statements. For 2016, Prager Metis valued NYCHP's intangible assets, pre-paid expenses and other items in the same way that Defendant had. After it was clear that the Government was declining to intervene, NYCHP returned to using Defendant as its auditor for its 2017 fiscal year.

On July 7, 2017, Plaintiff filed an Amended Complaint dismissing the qui tam action and asserting only a claim for retaliation under the FCA. After motions, Defendant's remaining counterclaim is for tortious interference with prospective economic advantage.

## II. STANDARD

Summary judgment is appropriate where the record establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is a genuine dispute as to a material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Liberty Lobby*, 477 U.S. at 248; *accord Saleem v. Corp. Transportation Grp., Ltd.*, 854 F.3d 131, 148 (2d Cir. 2017).

The court must construe the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in favor of the nonmoving party. *Liberty Lobby*, 477 U.S. at 255; *accord Soto v. Gaudett*, 862 F.3d 148, 157 (2d Cir. 2017) (citations omitted). When considering a cross-motion for summary judgment, the court "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Hotel Emps. & Rest. Emps. Union, Local 100 of N.Y. &*

*Vicinity, AFL CIO v. City of New York Dep't of Parks & Recreation*, 311 F.3d 534, 543 (2d Cir. 2002). When the movant has properly supported its motion with evidentiary materials, the opposing party may only establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (alteration in original); *accord Rodriguez v. City of New York*, 291 F. Supp. 3d 396, 408 (S.D.N.Y. 2018).

## III. DISCUSSION

### A. Retaliation

Defendant's motion for summary judgment is granted. The FCA's anti-retaliation provision provides in relevant part:

> [a]ny employee . . . shall be entitled to all relief necessary to make that employee . . . whole, if that employee . . . is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee . . . in furtherance of an action under this section or other efforts to stop 1 or more violations of [the FCA].

31 U.S.C. § 3730(h)(1). "Although [the Second Circuit] has yet to articulate a test for deciding when a plaintiff has set forth a claim for retaliation under section 3730(h), district courts in this Circuit, as well as [other] circuits, have generally required a plaintiff to show that (1) he engaged in activity protected under the statute, (2) the employer was aware of such activity, and (3) the employer took adverse action against him because he engaged in the protected activity." *U.S. ex rel. Chorches for Bankr. Estate of Fabula v. Am. Med. Response, Inc.*, 865 F.3d 71, 95 (2d Cir. 2017) (internal quotation marks and citation omitted). Plaintiff's FCA claim founders on the first two elements.

### 1. Protected Activity

There is no evidence that Plaintiff's activity -- voicing concerns over certain accounting entries in NYCHP's 2012 financial statements -- fell within the scope of the whistleblower protection provisions of the FCA.

Under the FCA, protected activity includes "(1) lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under the FCA, and (2) other efforts to stop one or more violations of the FCA." *Swanson v. Battery Park City Auth.*, No. 15 Civ. 6938, 2016 WL 3198309, at *3 (S.D.N.Y. June 8, 2016) (citing 31 U.S.C. § 3730(h)(1)). "To determine whether an employee's conduct was protected under the FCA, courts must evaluate whether '(1) the employee in good faith believes, and (2) a reasonable employee in the same or similar circumstances might believe, that the employer is committing fraud against the government.'" *Lawrence v. Int'l Bus. Mach. Corp.*, No. 12 Civ. 8433, 2017 WL 3278917, at *6 (S.D.N.Y. Aug. 1, 2017) (quoting *U.S. ex rel. Uhlig v. Fluor Corp.*, 839 F.3d 628, 635 (7th Cir. 2016)). In other words, the definition of protected activity has both a subjective and an objective test. "Protected activity is interpreted broadly," but "even under the broadest reading of the 'in furtherance of an [FCA] action,' an employee's activities that are not related to exposing or deterring fraud, are not 'whistle blowing as envisioned in the paradigm qui tam FCA action.'" *Garcia v. Aspira of New York, Inc.*, No. 07 Civ. 5600, 2011 WL 1458155, at *4 (S.D.N.Y. Apr. 13, 2011) (quoting *Hopper v. Anton*, 91 F.3d 1261, 1269 (9th Cir. 1996)).

Regardless of Plaintiff's subjective belief, the record here does not satisfy the objective test; it does not show that Plaintiff was preventing or uncovering a fraud on the government. In opposing this motion, Plaintiff asserts that his March 20, 2013, email to Todres -- stating that it would be "misrepresentation" not to adjust NYCHP's financial statements as he proposed -- and

7

Plaintiff's related discussions with Todres on March 26, 27 and 28, 2013, constitute protected conduct. Even if Plaintiff's adjustments were correct, the record contains no evidence that they had any bearing on NYCHP's eligibility to participate in the FSA programs or otherwise constituted a fraud on the government. The value of NYCHP's patents -- recorded as "intangible assets" -- was by far Plaintiff's largest proposed adjustment. No evidence shows that, if the value of intangible assets had been reduced to the extent Plaintiff suggested, Defendants' audit opinion would have expressed "doubt about the institution's ability to continue as a going concern" or been a "disclaimed or adverse opinion by the accountant." *See* 34 C.F.R. 668.15(b)(6). Nor is there evidence that the unrestricted net assets would not have remained positive, as required. 34 C.F.R. 668.15(c)(8)(i)(C). Even applying the full amount of Plaintiff's proposed adjustment, the value of unrestricted net assets would have been $26.1 million. Plaintiff does not argue, and adduces no evidence, that his suggested accounting adjustments would have made NYCHP ineligible to participate in the FSA programs, that NYCHP was receiving student aid funds to which it was not entitled or that NYCHP's financial statements failed to comply with any statutory or regulatory requirement for FSA participants. Construing the facts in Plaintiff's favor, no reasonable jury could find that Plaintiff's proposed adjustments were directed at preventing or exposing a fraud on the government such that they constituted protected activity. *See Fisch v. New Heights Acad. Charter Sch.*, No. 12 Civ. 2033, 2012 WL 4049959, at *5 (S.D.N.Y. Sept. 13, 2012) ("The plaintiff's investigation must be directed at exposing a fraud upon the government.") (internal quotation marks omitted); *see also Lawrence*, 2017 WL 3278917, at *8 (finding no protected activity where Plaintiff's "internal complaints" about the quality of his employer's internal controls did not describe a concern that the employer was engaged in defrauding Fannie Mae by filing false claims).

## 2. Notice

Defendant's motion to dismiss the retaliation claim is granted for the additional reason that there is no evidence that Defendant was aware that Plaintiff was engaged in protected activity for which the employer allegedly retaliated. Plaintiff must demonstrate that "his employer was aware that he was engaged in" protected conduct. *Weslowski v. Zugibe*, 626 Fed. App'x 20, 21 (2d Cir. 2015) (summary order); *see Swanson*, 2016 WL 3198309, at *5 (S.D.N.Y. June 8, 2016). "Plaintiffs alleging that performance of their normal job responsibilities constitutes protected activity must overcome the presumption that they are merely acting in accordance with their employment obligations." *Swanson*, 2016 WL 3198309, at *5 (internal quotation marks omitted) (quoting *U.S. ex rel. Williams v. Martin–Baker Aircraft Co.*, 389 F.3d 1251, 1260–61 (D.C. Cir. 2004)); *see Dhaliwal v. Salix Pharm., Ltd.*, No. 15 Civ. 706, 2017 WL 4083180, at *6 (S.D.N.Y. Sept. 14, 2017) ("An employee who simply engages in behavior wholly consistent with his job description will not, without more, provide notice that he is engaging in a protected activity."). "[A]n employee assigned the task of investigating fraud within a company must go beyond the assigned task and put his employer on notice that an FCA action is a reasonable possibility." *Fisch*, 2012 WL 4049959, at *6 (internal quotation marks omitted). Otherwise, the FCA retaliation provision would confer virtual immunity on an auditor for a government contractor from discipline or termination related to his work, because all his work would be "protected activity."

As an employee of Todres & Co., it was Plaintiff's job on the NYCHP 2012 audit to test and audit assets, receivables and intangibles as recorded on NYCHP's financial statements and to

identify any errors and adjustments required by applicable accounting standards.[2] Thus, it was Plaintiff's job to propose changes to the financial statements, as he did in his March 20, 2013 memorandum. Defendant's audit letter makes clear that the auditors' (Defendant, including Plaintiff) task was to "obtain reasonable assurance about whether the financial statements are free from material misstatement . . . . The [audit] procedures selected depend on the auditor's judgment, including the assessment of the risks of material misstatement of the financial statements, whether due to fraud or error." After certain adjustments had been made to the financial statements -- including some of those proposed by Plaintiff -- Defendant delivered a "clean" opinion: "In our opinion, the [2012 and restated 2011] financial statements present fairly, in all material respects, the financial position of [NYCHP] . . . in conformity with accounting principles generally accepted in the United States." In short, it was Defendant's and Plaintiff's ultimate assignment as auditors to determine whether the financial statements fairly represented -- and did not misrepresent -- NYCHP's financial condition.

Viewed in this context, Plaintiff's statement that "issuing the financial statements any other way would be a misrepresentation" would not have alerted Defendant that Plaintiff was doing anything other than what he was hired to do, and in particular, would not have put Defendant on notice that Plaintiff was seeking to prevent a violation of the FCA. The record contains no evidence that Plaintiff sought to "go beyond the assigned task" and put Defendant on notice that an FCA action was a reasonable possibility. *See Fisch*, 2012 WL 4049959, at *6.

---

[2] Plaintiff's motion to strike at Docket No. 122 is denied. *See Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 252 (2d Cir. 2005) (holding that the district court has discretion to consider arguments raised in a reply); *accord Kinra v. Chicago Bridge & Iron Co.*, No. 17 Civ. 4251, 2018 WL 2371030, at *7 n.1 (S.D.N.Y. May 24, 2018) ("That Defendants raised this argument for the first time in its reply does not preclude this Court from considering it."). Defendant's request for the Court to consider transcripts of Plaintiff's recordings is denied as moot.

The record provides no basis to conclude that Defendant was aware or believed that Plaintiff was trying to prevent a fraud on the government. To the contrary, Todres explained in his declaration his understanding of why Plaintiff's adjustments would not have been of interest to the government or affected NYCHP's eligibility for FSA participation. *See Weslowski*, 626 Fed. App'x at 22 ("Even assuming that [plaintiff] engaged in protected activity, he did not adequately allege that the County was aware that his refusal to approve the contract at issue was in furtherance of efforts to prevent a violation of the FCA."). As Plaintiff failed to provide evidence that Defendant was aware that Plaintiff was engaged in protected conduct, Defendant's motion for summary judgment on the retaliation claim is granted.

### B. Defendant's Counterclaim -- Tortious Interference with Prospective Economic Advantage

Todres asserts a counterclaim against Ortiz for tortious interference with prospective economic advantage based on the loss of the NYCHP account for a year while the Government investigation was ongoing. Todres claims that Ortiz made false allegations that caused the Government to issue CIDs to NYCHP and that "as a result of having to respond to this investigation, Todres & Co.'s relationship with NYCHP was injured."

Ortiz's motion for summary judgment on the tortious interference counterclaim is granted because the evidence is insufficient as a matter of law to show causation -- i.e., that "the defendant's acts injured the relationship." *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 261 (2d Cir. 2015) (applying New York law). Tortious interference with prospective economic relations requires not only "but for" causation -- that the "plaintiff would have entered into an economic relationship but for the defendant's wrongful conduct," *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 107 (2d Cir. 2009) -- but also that the defendant's interference be "direct." *See Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 331 F. Supp. 3d 221, 239 (S.D.N.Y. 2018),

11

*reconsideration denied*, No. 15 Civ. 4244, 2018 WL 5650004 (S.D.N.Y. Oct. 30, 2018) ("[T]he defendant's interference must be direct. The defendant must target some activities directed toward the third party and convince the third party not to enter into a business relationship with the plaintiff."); *accord Fonar Corp. v. Magnetic Resonance Plus, Inc.*, 957 F. Supp. 477, 482 (S.D.N.Y. 1997) ("[U]nder New York law, in order for a party to make out a claim for tortious interference with prospective economic advantage, the defendant must interfere with the business relationship directly.") (citing *G.K.A. Beverage Corp. v. Honickman*, 55 F.3d 762, 768 (2d Cir. 1995)).[3]

The record contains no evidence that Ortiz's actions were the direct cause of NYCHP's retaining a different firm for the 2016 audit. Here, the issuance of the CID letter, not Plaintiff's sealed FCA complaint, caused NYCHP to retain a different auditor. Under the FCA, the Government has discretion whether to commence an investigation and issue a CID letter. 31 U.S.C. § 3733(a)(1). *See Prosser v. Whitaker*, No. 17 Civ. 1662, 2018 WL 5923915, at *2 (D.D.C. Nov. 13, 2018) ("[T]he False Claims Act explicitly grants the Attorney General prosecutorial discretion."); *U.S. v. New York Soc. for the Relief of the Ruptured & Crippled, Maintaining the Hosp. for Special Surgery*, No. 07 Civ. 292, 2014 WL 3905742, at *8 n.3 (S.D.N.Y. Aug. 7, 2014) ("Congress expressly gave the United States discretion to intervene in FCA actions."). As Ortiz had no authority to control or compel a Government investigation, he cannot be considered the "direct" cause of NYCHP's decision to retain Prager Metis for the 2016

---

[3] The Court finds persuasive the Government's argument that exposing relators to potential tort liability in the event that the Government issues CIDs but declines to intervene will discourage relators from bringing fraud allegations to the Government. The Court also notes that the FCA provides a remedy to qui tam defendants who prevail in FCA actions that are "brought primarily for purposes of harassment" by permitting a court to award the defendant "its reasonable attorneys' fees and expenses," 31 U.S.C. § 3730(d)(4), and that a recipient of a CID can seek to modify or set aside the CID. 31 U.S.C.§ 3733(j)(2).

audit.  *See Gym Door Repairs, Inc.*, 331 F. Supp. 3d at 239.  Rather, the Government's independent investigation, over which Ortiz exercised no control, interfered with NYCHP's relationship with Todres & Co.  NYCHP's CFO Errol Virasawmi testified that the Government's investigation, evidenced by NYCHP's receipt of the CID, resulted in NYCHP hiring a different accounting firm to audit NYCHP's financial statements for 2016.  After the investigation concluded, NYCHP returned to Todres & Co. as its auditor for the 2017 audit year.  Because the record contains insufficient evidence of causation, Ortiz's motion for summary judgment on the tortious interference counterclaim is granted.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED and Plaintiff's cross-motion for summary judgment is GRANTED.

The Clerk of Court is respectfully directed to close the motions at Docket Nos. 93, 111 and 122 and to close the case.

Dated: March 14, 2019
      New York, New York

                                                 LORNA G. SCHOFIELD
                                             UNITED STATES DISTRICT JUDGE